William C. Hecht, Jr., J.
Defendant moves for a dismissal of the first, second and third causes for legal insufficiency, or in the alternative for relief with respect thereto pursuant to rule 103 of the Rules of Civil Practice. It is alleged that plaintiff was engaged as a broker by the defendant to secure a lease. The first cause is based on the contract; the second is in quantum meruit, and the third is in deceit.
Under the first cause the question is whether the defendant is absolved from liability by reason of the escape provision contained in the brokerage contract. The provision is as follows: “ if for any reason whatsoever, no matter what such reason may be, such lease is not executed or the security deposited thereon, even though it may be the default of the landlord or the default of the proposed tenant, no commission shall be deemed earned and no payment of any kind shall be made to the undersigned.” The agreement provides further: “ Certain questions have arisen with regard to said property and proposed lease which are to be taken up promptly with the proposed landlord and in the event he refuses to approve of these questions then of course there will be no lease made, no security deposit, and there shall be no obligation whatsoever on the part of the landlord to the undersigned, and this is of course in addition to the other provisions hereof, which shall remain in effect in the event that said proposed landlord shall accept certain disputed questions which exist at this time, but the lease shall yet not be drawn, executed or the deposit paid thereon.”
The foregoing escape clause brings this contract squarely within the holding in Heller & Henretig, Inc. v. 3620 — 168th St., Inc. (302 N. Y. 326), where the court dismissed the broker’s complaint even though it alleged that the owner’s failure to execute a written contract of sale was arbitrary.
Plaintiff argues that the second paragraph quoted above negatives the effect of the escape clause. In my opinion, the effect is just the reverse. That paragraph indicates that though certain questions are to be taken up with the proposed landlord, this is in addition to the other provisions (including the first paragraph quoted above), which shall remain in effect even if the landlord accepts the disputed questions, but the lease is not consummated ‘ ‘ for any reason whatsoever, no matter what such reason may be * * * even though it may be the default of the landlord ”.
The second cause of action, on quantum meruit, falls for the same reason. The escape clause is as effective a bar to this cause as to the first cause of action.
*552 The third cause of action alleges that (a) defendant falsely represented to plaintiff that he was desirous of obtaining a long-term tenant of said premises; (b) said false representations were made with the intention that plaintiff rely thereon; (c) plaintiff, on the basis of such reliance undertook to obtain such a tenant, and signed the brokerage agreement in question here; (d) plaintiff produced a lessee who agreed on all the terms and conditions of said proposed lease with defendant; (e) in truth and in fact, defendant intended to and did use the information from such offer as a means of obtaining an inflated and increased offer for the purchase of said premises from another, and (f) plaintiff was unaware of defendant’s intention to use the offer of plaintiff’s proposed lessee merely as a lever to obtain a higher purchase price.
These allegations state a cause of action for deceit; “ the essential constituents of the action are tersely and adequately stated as representation, falsity, scienter, deception and injury ” (Ochs v. Woods, 221 N. Y. 335, 338).
The statement that defendant falsely represented that he intended to lease the property, when in truth and in fact he really intended to sell it, and to use the lease offers to effectuate that purpose, “ may be deemed the statement of a material existing fact, because it falsely represents the state of [defendant’s] mind and the state of his mind is a fact ” (Deyo v. Hudson, 225 N. Y. 602, 612; see, to the same effect, Ritzwoller v. Lurie, 225 N. Y. 464, 468; Adams v. Gillig, 199 N. Y. 314, 322). As was aptly stated by Finch, J., speaking for the court in Pease & Elliman v. Wegeman (223 App. Div. 682, 684 [1st Dept.]):
“ There is set forth a promise made with a present intention not to fulfill the same and with the intention that the plaintiff should act upon said promise; that the plaintiff did so act in reliance thereon, and thereby suffered damage. These allegations contain the elements of an action in fraud and deceit. It is contended by respondent that the complaint is defective in that it does not allege a false representation in regard to an existing fact, but that the promises alleged are to be kept and performed in the future. A complete answer to this contention is that the complaint alleges that when the promises were made the defendant then intended not to fulfill them. It is well settled that a declaration of a present intention, false when made, to perform an act in the future constitutes a false representation of an existing fact. As was said by Mr. Justice Dowling (now presiding justice) in Gabriel v. Graham (168 App. Div. 847); ‘ Defendant claims that the only misrepresentations alleged *553 were not of existing facts or conditions but of future happenings or conditions. But this contention overlooks entirely the fact that the representations enumerated are representations of defendant’s then existing intention * * *. As the rule is laid down in Halsbury’s Laws of England (Vol. 20, p. 660): ‘ ‘ The existence or non-existence of an intention in the mind of a man at any given moment is as much a fact as the existence or non-existence of any other thing. Any statement, therefore, of such existence or non-existence is a representation. The proof of falsity may be difficult, but this difficulty does not make the statement any the less one of fact.” In Bigelow on Fraud (Vol. I, p. 484) it is said: ‘ ‘ To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made.” ’
“ The complaint, therefore, may be sustained as setting forth a cause of action for fraud and deceit.”
Defendant relies on Elliman & Co. v. Sterling Garage, 279 App. Div. 20 [1st Dept.], where the court said, per Van Voorhis, J. (pp. 21, 22):
‘ ‘ A commission could only be earned, under the initial arrangement with the broker, in event that the owner were to agree to accept a prospective tenant proeurred by the broker, and to lease the property for the length of time and at the rent which the prospective tenant offered. Nothing in the agreement of hiring of plaintiff prevented the owner from using any offer obtained as a leverage by which to obtain a better offer from another customer through another broker. That is what actually happened. The owner did obtain a lease at a higher rental through the instrumentality of another broker who was paid a full commission.
* * #
‘£ No evidentiary facts have been adduced showing any fraud in the making of that agreement, nor is the gravamen of the action fraud or bad faith (Douglas L. Elliman & Co. v. Sterling Garage, Inc., 277 App. Div. 969).
££ The intention and object of this letter was clearly to enable defendant to negotiate with others without liability to pay a brokerage commission to plaintiff, unless a lease were actually to be signed with plaintiff’s client Marcus. Even if, as plaintiff’s affidavits state, defendant’s representatives said upon this occasion that Mr. Marcus’ offer would be acceeptable, no liability to pay a commission to plaintiff could come into existence in view of this letter unless a lease with Marcus were actually signed. ’ ’
*554 But that case is clearly distinguishable where an owner informs a broker that he wishes to lease his property, the broker takes the risk that the owner may use his offer as a lever to get a more favorable tenancy, so that no element of false representation or of reliance is involved. But the broker does not take the risk that the owner has no intention to lease to anyone, but rather intends to sell, and to use the broker’s efforts as a lever to get a better sale price. Further, in both the foregoing cases, and in Wenger v. Lefrak (279 App. Div. 993 [1st Dept.]), the court emphasized that no element of fraud or of bad faith was involved.
It is clear, however, that plaintiff is proceeding on the wrong theory of damages. He seeks to recover the full brokerage commission which would have been possible if the proposed lease had been consummated with his client. This would give him in the fraud action the full measure of damage which he would recover in the action for breach of contract, and would circumvent the escape clause in the contract. “ The purpose of an action for deceit is to indemnify the party injured. All elements of profit are excluded. The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong (Reno v. Bull, 226 N. Y. 546, 553; see, to the same effect, Sager v. Friedman, 270 N. Y. 472, 481; Foster v. Di Paolo, 236 N. Y. 132, 134; Ochs v. Woods, 221 N. Y. 335, 340-341, supra; Majestic Export Co. v. Katz & Greenfield, 248 App. Div. 205, 206 [1st Dept.].)
Therefore, the only damages which plaintiff may recover is compensation for the time, effort and money which he expended in what he alleges was a wild goose chase induced by defendant’s fraudulent representation.
Paragraphs 38 and 39 of the third cause of action are not relevant to an action for deceit. The motion to strike these paragraphs, pursuant to rule 103 of the Rules of Civil Practice is granted. The motion to dismiss the first two causes of action pursuant to rule 106 of the Rules of Civil Practice is granted. The motion to dismiss the third cause of action is denied.